UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.  Case No. 8:20-cr-180-T-60AAS

KEON MOORE,

　　Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**

This matter is before the Court on "Defendant's Motion to Suppress Evidence Illegally Obtained," filed by counsel on October 23, 2020. (Doc. 29). On October 30, 2020, the United States of America filed a response in opposition to the motion. (Doc. 30). On December 8, 2020, the Court held a hearing to address the motion. (Doc. 38). After reviewing the motion, response, evidence, testimony, court file, and the record, the Court finds as follows:

**Background**

The facts are largely undisputed. The charges in this case stem from an incident that occurred at a Public Storage facility located in Brandon, Florida. On January 20, 2020, Defendant Keon Moore leased a storage unit at the facility (Unit 0351, a 5' x 10' space). On February 11, 2020, Grace Marchena – the manager – called the non-emergency line at the Hillsborough County Sheriff's Office to report a suspicious incident. She was interviewed by Detective Andrew Deluna in person at the facility a few days later.

According to Marchena, while doing a "lock check" on the property at approximately 4:23 p.m., she discovered that there was no lock on Unit 0351. She attempted to open the door and encountered some resistance, but she was ultimately able to get the door open and observed two unknown black males (an adult and a juvenile) in the storage unit. Because there was no light source in the storage unit, the parties were in the dark. There were minimal items in the unit. The parties departed the scene in a silver Ford Crown Victoria. Marchena believed that Defendant was a passenger in the vehicle and not one of the individuals in the storage unit, but she was not 100% sure. Marchena later indicated that she glimpsed an unzipped gun case holding what appeared to be a rifle wrapped inside a towel.

On February 14, 2020, Detective Deluna contacted Detective Christopher Rose, a member of the Special Investigations Division Gang Unit, because Defendant was listed as a documented gang member. Detective Rose knew of Defendant and believed him to be associated with a gang, MPR (Money, Power, Respect). Detective Rose was fully briefed by Detective Deluna concerning the incident at the Public Storage facility.

On February 17, 2020, Detective Rose requested a K-9 unit to respond to the Public Storage facility with him; he arrived at approximately 10:00 am, and the K-9 arrived ten to fifteen minutes later. A K-9 narcotics sniff was conducted by Detective Dixon and "Gus," his trained narcotics-detecting dog; Gus altered to Defendant's unit. After the alert, Detective Rose re-interviewed Marchena. He also ran Defendant's criminal history and discovered that Defendant was a convicted felon.

Based on a sworn affidavit, Detective Rose obtained a search warrant for Defendant's storage unit from a Florida state court. On February 17, 2020, law

enforcement officers executed the search warrant, discovering guns and drugs. Defendant was arrested on February 18, 2020. Defendant has moved to suppress this evidence, arguing that (1) the search was unreasonable because he had a legitimate expectation of privacy in his storage unit, (2) the officers lacked reasonable suspicion to justify a dog sniff, and (3) no exigent circumstances justified the entry of his unit prior to obtaining a warrant. Defendant further argues that the search warrant contained deliberately false statements or statements made in reckless disregard of the truth, and that without these statements and the result of the dog sniff, law enforcement lacked probable cause to support the search warrant.

## Analysis

Under the Fourth Amendment, all persons have the right "to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Supreme Court has generally interpreted this to mean that a search must be based on probable cause and must be executed pursuant to a warrant. *Katz v. United States*, 389 U.S. 347, 356-57 (1967). While some circumstances may allow searches and seizures without a warrant, the Fourth Amendment favors the use of warrants. *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (noting "the Fourth Amendment's strong preference for searches conducted pursuant to a warrant").

### *Standing*

The Court first considers whether Defendant has standing to contest the search under the terms of the rental agreement. *See Rakas v. Illinois*, 439 U.S. 128, 134 (1978); *United States v. Cooper*, 203 F.3d 1279, 1284 (11th Cir. 2000). "Fourth

Amendment rights . . . are personal, and only individuals who actually enjoy the reasonable expectation of privacy have standing to challenge the validity of a government search." *Id.*

Paragraph 8.2 of the storage unit rental agreement provides

> *If criminal activity is suspected*, in an emergency, if you fail to grant us access upon 3 days' written notice, or if you default under this Rental Agreement, *we or a governmental authority have the right to remove your lock(s) and enter Your Space without providing notice or seeking your consent*, in order to: (1) examine Your Space or its contents, (2) make repairs and take other action to preserve Your Space or the Facility, (3) comply with any law or regulation, or (4) enforce our rights. (emphasis added).

Under this contractual provision, Public Storage and governmental authorities have the right to enter a storage unit – without providing notice or seeking specific consent – if criminal activity is suspected.

Considering the rental agreement, the Court finds that Defendant had no reasonable expectation of privacy in the contraband stored within his unit. Based on Marchena's observations and the dog sniff, there was a sufficient basis to suspect criminal activity. Because Defendant consented to the search under the terms of the rental agreement, he had no reasonable expectation of privacy in the storage unit. *See, e.g., Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) ("It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent."); *Zap v. United States*, 328 U.S. 624, 628 (1946) (concluding the defendant voluntarily waived his Fourth Amendment rights when he consented to the inspection of his records by the government as a condition of obtaining a government contract); *United*

*States v. Vargas*, No. 14 CR 579, 2015 WL 13850021, at *2 (N.D. Ill. Apr. 24, 2015) ("Consent through a written contract has been accepted as a valid waiver of one's Fourth Amendment rights."). Consequently, the motion to suppress is denied.

***Good Faith Exception***

However, even if Defendant had not consented to the search through the rental agreement, the seized evidence might still be admitted if officers reasonably relied in objective good faith on a subsequently invalidated warrant that was issued by a detached and neutral magistrate. *See United States v. Leon*, 468 U.S. 897, 914-26 (1984); *United States v. Sutton*, No. 8:04-cr-325-T-17TBM, 2007 WL 705044, at *5 (M.D. Fla. Mar. 2, 2007) (citing *Leon*). In this case, a state court judge authorized a search warrant, which law enforcement officers relied upon in good faith. Even if the probable cause affidavit contained minor inaccuracies, the warrant would still be supported by probable cause. Under the good faith exception, which is applicable here, the evidence should not be excluded.

Accordingly, "Defendant's Motion to Suppress Evidence Illegally Obtained" (Doc. 29) is hereby **DENIED**.

**DONE and ORDERED** in Chambers, in Tampa, Florida, this 14th day of December 2020.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**